1-22-1516 W.C. Westside Transport, Inc. Appellant by Kenneth Smith v. Illinois Workers' Compensation Comm'n Philip Miller and C.R.S.T. Appellees Philip Miller by Matthew Novak and C.R.S.T. by Christina Bitzer Mr. Smith, you may proceed. Good morning, Justices, and good morning to the Councils for the Appellees. My name is Kenneth Smith. I will try to be as brief as possible, as I know the case has been fully briefed, but I just wanted to highlight a few areas. The first area being is that legally, from a legal standpoint, the Illinois Workers' Compensation Commission did not address any case law, cite any law relating to how this Court has dealt with cases that address the theory of break-in causation. Just specifically, they stated that the treating doctor wasn't legally inclined to give a position that the second accident broke the chain of causation, but in doing so, they set forth a standard that pretty much said he can't do it, but we know it when we see it, and that is the big legal issue in this case, in that they did not really apply the Illinois case law that deals with factors that you have to look at in dealing with the break in the chain of causation, and we believe that that case is a national fray case, and had they addressed those factors, they would have come to a different conclusion, and solely their sole reliance in this case was that the treating doctor did not and could not render a legal opinion, and even if the Court agrees with that, you still have to have medical facts to support a legal conclusion, and everything they did went against the medical facts of the treating doctor. It's kind of almost like saying that the treating doctor cannot give a causation opinion. Counsel, the treating doctor gave a legal conclusion when he said it was an intervening cause, but the treating doctor also, he also gave an opinion that the June 9, 2016 accident accelerated the claimant's underlying degenerative condition beyond its normal progression, and that but for that accident, the complainant may not have needed a knee replacement and might have been able to be treated conservatively for the rest of his life. What do you do with that opinion? Your Honor, I could cite to his own testimony where he said on page 396 of the record that he couldn't say that the petitioner would need a knee replacement surgery after the first accident. All he could say is that he would probably have needed conservative treatment for the rest of his life. That's found on page 396 of the record. Your Honor, what do you do with his opinion that the accident of June 9 accelerated the underlying degenerative condition beyond its normal progression? Your Honor, that's saying that you could never pretty much have a case where an intervening accident breaks the chain of causation, because factually, he specifically said that the first accident's chain of causation was broken by the second. And it's direct evidence in terms of the issue of the break of causation, his opinion, it's direct evidence. That is, in terms of saying that there's an aggravation, that's secondary evidence to proving what the commission tried to prove. I think that direct evidence is a lot more persuasive in that in dealing with the effect of the second accident, not only do you have to look at that he's saying that the causation was broken, but it's hard to believe that two years after the second accident, he was still recommending arthroscopic surgery to treat a meniscus, a re-tear of the meniscus. It wasn't until about three years after the second accident, he was actually recommending the knee replacement. The court, what the commission did is said that, okay, if you have an untreated meniscal tear, of course, it's going to accelerate the need for you having or needing a knee replacement surgery. And that's why the factors in this case is if you look at his symptoms changed after the second accident, it changed the pathology in his knee and his surgical intervention, the surgery that the doctor recommended changed after the second accident. And finally, his ability to work changed after the second accident. And that's the legal rationale in national freight. The they just said the doctor can't opine, cannot opine to a break in causation. It's legal. We'll know it when we see it. And just the second point I'll make very quickly is the commission had no authority to award TTD in this case. There were three separate step sheets filled out. If you look at the step sheet in regards to this case, TTD was not an issue. There was a clear abuse of their discretion to award TTD. Counsel, in your brief on this TTD issue, no jurisdiction, you didn't cite a single case in support of it. And that's forfeiture. The issue is forfeited if you don't cite any authority in support of the position. Your Honor, we raised it on review, whether or not you guys address it or not. It's a legal issue. But you didn't raise it. You didn't cite any authority in your brief for your position. Your Honor, I don't want to say it's common knowledge that they don't have authority to something that was not raised. If the court decides that raising the issue and not citing a case is forfeiture, they can do so. Thank you. At this time, I'll rest. Questions from the court? Mr. Smith, you'll have time in reply. Mr. Novak, I believe you are proceeding first. Yes. Thank you. Good morning, Justices. May it please the court and counsel. Matthew Novak on behalf of the appellee, Philip Miller. Being in the fortunate position that I am where both the arbitrator and then the commission have found both employers liable for benefits to my client and simply they're fighting over which one is liable, I'm largely just going to rest on my brief. I would say, ultimately, I think that the question before this court is whether the commission's decision is against the manifest way to the evidence. I believe there is evidence in the record to support the decision. Therefore, I think it should be affirmed. And as also, as we pointed out in our brief regarding the issue of TTD benefits, it certainly was that hearing in terms of the request for hearing forms or as counsel called that stiff sheet. And the argument, as was pointed out by Justice Hoffman, was essentially forfeited as we argued in our brief. So I'll rest on my brief and I'll devote the rest of my time to my co-appellee unless there are any questions for me. Any questions? No. No. Thank you, Mr. Novak. Okay. Ms. Bitzer, you may respond. Yes, thank you. Good morning and may it please the court and good morning, counsel. Christina Bitzer for appellee CRST. The commission's decision was not against the manifest way to the evidence as Mr. Novak stated and thus must be affirmed in its entirety. Westside has not satisfied its burden on appeal of demonstrating that the commission's causation determination was against the manifest way to the evidence. The commission in exercising its authority to weigh evidence and resolve conflicts in medical testimony, the commission properly found the petitioner's June 9, 2016 injury, which he sustained while working for Westside Transport, was the event that caused the need for petitioner's left total knee replacement and his current condition of ill being. As this court explained in PAR Electric, it's the law in Illinois that when an employee's condition is weakened by a work-related accident. Counsel, why don't you just tell us what is contained in the record that supports a decision? We know the law. Yes, your honor. Thank you. So, your honor, at the end of the day, it comes down to the fact that the commission exercised its authority to resolve its expertise in the medical realm, properly determined that one portion of Dr. Lee's testimony was more credible than the other. This is because as the court noted, Dr. Lee ventured into a legal causation opinion and outside of the scope of a mere medical opinion. And as has started with the first accident, which permanently aggravated his underlying osteoarthritis, which essentially set into motion a chain of events, which ultimately resulted in his need for a knee replacement. This is consistent with Dr. Lee's medical record when he released petitioner back to work after his first accident. Dr. Lee's medical record succinctly demonstrates upon releasing petitioner that petitioner would require conservative treatment in the form of pain medications, VSCO supplementation, and potentially a total knee replacement as a result of this permanent aggravation of his underlying osteoarthritis as a result of his 2016 injury while working for Westside. Westside's argument, which largely rests upon the contention that the commission failed to cite any case law addressing intervening causation or perform a factor-based or prong-based analysis as set forth in National Freight is without merit. And again, not to rehash the laws the court clearly knows, but a factor-based analysis as the court held in Paralectic is not required to determine whether a subsequent work-related event severs the chain of causation. The commission may properly rely upon the evidence in the record using its authority to do so as the finder of fact in that capacity. Even if arguing, arguendo, that the court were to consider the prongs and harbor freight, it still would not meet the rule. The second accident would still not completely sever the causation, chain of causation between the first injury that petitioner sustained while working for Westside and a subsequent condition of ill-being. Really, his subsequent accidents as demonstrated by the medical record and his MRIs, his post-operative diagnostics after his arthroscopy demonstrate that petitioner's subsequent accidents were just mere manifestations of the symptoms which were ultimately brought about by his first accident sustained while working for Westside. They were merely continuations of that underlying pathology. There was no discrete injury that took place in the second or third accidents that was beyond just temporary manifestations of symptoms from the degenerative osteoarthritic condition which was manifested through a permanent aggravation of same after his first accident. Let's see. CRST agrees that the issue was forfeited on appeal, a TTD, just for the sake, and again, not to burden the court with a superfluous law that it already knows. The Ming auto case, the Ming auto body case is on point in rebuttal to appellant's the commission did not have authority to enter a TTD award. Again, we agree though that the TTD argument was forfeited on appeal because appellant has not cited any relevant case law related thereto. I think it's also worth noting that petitioner was asymptomatic prior to his first accident. He reported in his IME rather with Dr. Watson as well as in his testimony at hearing that his symptoms began with his June 9th, 2016 accident. Prior to that point, he had never received a recommendation for an MRI, conservative treatment, or ultimately a left total knee replacement was when Dr. Lee released him after his 2016 injury. Dr. Lee, again, succinctly said in his medical record that petitioner may require a total knee replacement as a result of his permanent aggravation of underlying osteoarthritis, which resulted from this accident. It is also worth noting that as petitioner treated from in his subsequent accidents, following his subsequent accidents, the treatment that Dr. Lee administered after the second and third accidents was exactly what Dr. Lee anticipated when he released petitioner to work after his first. Dr. Lee opined that petitioner was going to require treatment for the foreseeable future in the form of pain medications, injections, VSCO supplementation, and potentially a total knee replacement. That's exactly what happened, your honors. The trajectory of the treatment was exactly as Dr. Lee anticipated when he released petitioner to work after the first accident. Well, the trajectory may be the same, but what about the time element? Your honor, the time element of the trajectory that the subsequent incident sped up the time. Sure, and even if that were the case, even if the court were to rely upon the portion of Dr. Lee's testimony that touched on that, even if it was an acceleration of the time frame, it still wasn't a complete break in causation. The evidence in accident, petitioner would not have been a total knee replacement candidate. Just because it sped it up does not demonstrate that there is a complete break in causation between the first accident and the petitioner's current condition of ill-being. To say that a petitioner would not have been a total knee replacement candidate, an appellee would contend that even if the commission and consequently the court were to consider Dr. Lee's other inconsistent opinion that said that the second accident aggravated or accelerated the condition, that a left total knee replacement was going to happen anyway. It began with that first accident. Well, isn't your best argument par that stands for the proposition that when the condition is weakened by a work-related accident, a subsequent accident that aggravates or accelerates the condition does not break the And par is completely on point. I mean, par is so factually analogous in so many ways. That is, Justice Hoffman, exactly what happened here. The first accident weakened petitioner's condition such that the subsequent accidents, even if they didn't happen, the petitioner still would have required the knee replacement. Of course, Harris was of the position that he required a knee replacement before the June accident because of his osteoarthritis. Yes, Your Honor. However, he wasn't experiencing a symptomatic manifestation of that at that point. So even if he did require it prior to that point, it wasn't bothersome. I'm sure that, you know, plenty of us as we age have all kinds of degenerative issues that don't bother us until there's something that really exacerbates it, which is precisely what happened with the June 9, 2016 injury. I see my time has expired. Okay. Thank you. Thank you, Ms. Bitzer. Mr. Smith, you may reply. Sure, Your Honor. I'll just point out a couple things on the rebuttal. Just the first thing is that there were three stiff sheets in regards to this case. If you look at the stiff sheet in regards to the first case, CTD is not an issue. He didn't raise that at trial. It can't be raised now. The second point I want to mention is that I believe the correspondence attorney said that the doctor's treatment plan after the second injury did not change. That's totally not supported by the record. If you look at the record, even after the second injury, Dr. Lee is saying he had a recurrent meniscal tear. If you look at his notes from November of 2017, after the second meniscal tear, he is recommending arthroscopic surgery. The co-respondent denied the recommendation for arthroscopic surgery. If you do not repair an arthroscopic tear, it's going to get worse. It's going to worsen. That's exactly what happened, and that's what caused the need for knee replacement surgery. If you look at Dr. Lee's notes, the last note from December of 2019 is when he finally said, look, arthroscopic surgery won't help this knee replacement surgery. That's one of the biggest things when you are looking at national freight is how does the surgical recommendations change. In this case, it changed by the second respondent not granting the arthroscopic surgery. Two years later, his doctor saying that the second accident broke the causation of the first accident, his doctor saying he could not say that he would need a knee replacement surgery after the first accident, but conservative care for the rest of his life, which is on page 396, to him finally saying in 2019 he needs knee replacement surgery. I think when you weigh all those factors, if the court just looks at the national freight and applies the law, I think this is specifically a case that would come to a different conclusion than what the commission concluded. Thank you. Questions from the court? Thank you, Mr. Smith. Thank you, Mr. Novak, and thank you, Ms. Bitzer. This matter will be taken under advisement and a written disposition shall issue.